IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BILLY JONES**                                                                                     **PLAINTIFF**
**ADC #165663**

V.                           NO. 4:19-cv-00944-KGB-ERE

**ESTALLA BLAND and**
**DENISE POWELL**                                                                           **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.     Procedure for Filing Objections:**

This Recommendation has been sent to United States District Judge Kristine G. Baker. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen days of the date of this Recommendation. If no objections are filed, Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

**II.    Background:**

Plaintiff Billy Jones, an Arkansas Division of Correction ("ADC") inmate housed at the Varner Unit, filed this civil rights lawsuit *pro se* under 42 U.S.C. §

1983. *Doc. 1*. Mr. Jones alleges that Defendants Estella Bland and Denise Powell were deliberately indifferent to his serious medical needs.[1]

Pending before the Court is Defendants' motion for summary judgment, statement of facts, and brief in support. *Docs. 65, 66, 67*. Mr. Jones has not responded to the Defendants' motion, and the time for doing so has passed. *Doc. 68*.

For the reason explained below, the Court recommends that the Defendants' motion for summary be granted and all remaining claims be dismissed, with prejudice.

### III. **Summary Judgment Standard:**

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. See FED.

---

[1] The Court previously dismissed Mr. Jones' claims against the Doe Defendant based on his failure to timely identify and serve that individual. *Doc. 46*. In addition, the Court previously dismissed Mr. Jones' claims against Defendants Wendy Kelley, Yolanda Clark, Denise Powell, James Gibson, and Dexter Payne based on his failure to fully exhaust his administrative remedies. *Doc. 59*.

R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

A party is entitled to summary judgment if - but only if - the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

## IV.   Factual Background:

The undisputed facts,[2] viewed in a light most favorable to Mr. Jones, are these. On March 22, 2018, while he was working in the kitchen at the Varner Unit, Mr. Jones burned his right foot when he accidentally spilled hot liquid and a chicken breast into his boot.[3] *Doc. 66-3 at 24-25*. Approximately 25 minutes later, nursing staff evaluated Mr. Jones and noted "[r]edness, blisters, edema[,] and skin peeling to rt. foot." *Doc. 66-1 at 4*. Mr. Jones reported that his pain level was a four on a ten-point scale.[4] *Id*. Nursing staff: (1) cleaned the wound with derma wound cleaner; (2) applied Silvadene to the wound with non-adhesive dressing; and (3) wrapped the wound with Kerlix. *Id*. Mr. Jones already had active prescriptions for two 800 milligrams of Ibuprofen per day and two 325 milligrams of Tylenol per day. *Doc.*

---

[2] Pursuant to Local Rule 56.1, the Court deems admitted all material facts set forth in the Defendants' statement of material facts (*Doc. 66*). These facts are taken from: (1) Defendants' statement of facts; (2) Mr. Jones' medical records; and (3) Mr. Jones' deposition testimony. *Doc. 66, Doc. 66-1, Doc. 66-2, Doc. 66-3*.

[3] Mr. Jones testified that he burned "the top of his right foot." *Doc. 66-3 at 29*.

[4] During his deposition, Mr. Jones testified that he "probably" told the nurse that his pain level was a "ten" on a ten-point scale. *Doc. 66-3 at 34*.

*66-3 at 36-37*. After the incident, medical staff: (1) issued Mr. Jones a script for treatment calls; (2) issued him a no duty script; (3) placed him on the provider list; and (4) issued him crutches. *Doc. 66-1 at 4, 7*; *Doc. 66-2 at 17*.

On March 23 and March 25, Nurse Witni Knowles treated Mr. Jones' wound in the same manner it was initially treated. *Doc. 66-1 at 5*. On March 23, Defendant Bland also examined Mr. Jones. She noted "intact blistering, no signs of infection, capillary refilling." *Id. at 8*.

On March 26, Mr. Jones returned to the infirmary complaining of pain and requesting antibiotics. *Id. at 6*. At that time, Nurse Browning noted redness to the wound, but told Mr. Jones the provider was not able to examine him at that time. According to her notes, Mr. Jones was "pleased with care at this time." *Id*.

Later that day, Advanced Practice Registered Nurse ("APRN") Matthew Wood examined Mr. Jones. APRN Wood diagnosed Mr. Jones with second-degree burns to his right food.[5] *Id. at 7*. APRN Wood noted that Mr. Jones was experiencing minimal swelling. He issued Mr. Jones: (1) Clindamycin (an antibiotic); and (2) Silver Sulfadiazine Cream. *Id*.; *Doc. 66-3 at 44*. According to his encounter notes, Mr. Jones asked APRN Wood why the nursing staff had not provided him antibiotics

---

[5] Although Mr. Jones testified that he believed that he suffered from first-degree burns, his medical records do not support that statement. *Doc. 66-1 at 19; Doc. 66-2 at 38; Doc. 66-3 at 40*.

4

sooner. APRN Wood told Mr. Jones that antibiotics are not provided for second-degree burns "unless deemed appropriate." *Doc. 66-1 at 6*.

On March 27, nurse Vanessa Gibbs treated and wrapped Mr. Jones' wound. *Id. at 8*.

On March 30, Mr. Jones reported to sick-call complaining of pain in his right foot. Nursing staff prescribed him Naproxen to be taken twice daily for five days. *Id. at 9*.

On March 31, April 1, and April 2, nursing staff treated and wrapped Mr. Jones' wound. *Id. at 9-10*. At his April 2 encounter, nursing staff noted pain upon removal of Mr. Jones' dressing. *Id. at 10*.

On April 3, Defendant Bland examined Mr. Jones, noting no sign of infection. *Id. at 10, 11*. She prescribed Mr. Jones 800 milligrams of Ibuprofen to be taken three times daily. *Id*.

On April 4, nursing staff treated and wrapped Mr. Jones' wound. *Id. at 11*.

On April 5, Defendant Bland again examined Mr. Jones. She noted no sign of infection and no odor. *Id. at 12*. She gave Mr. Jones an injection of Ketorolac, a non-steroidal anti-inflammatory drug. *Id*.

On April 9 and April 10, nursing staff treated and wrapped Mr. Jones' wound. *Id. at 13-14*.

On April 11, ARPN Wood evaluated Mr. Jones during sick call based on his complaints of pain and a limited range of motion in his right foot. *Id. at 15*. APRN Wood noted: (1) minimal swelling in Mr. Jones' right foot; and (2) that the wound was healing "appropriately." *Id.*; *Doc. 66-2 at 27-28*. ARPN Wood submitted a consultation request for Mr. Jones to be evaluated at the Arkansas Heart Hospital Wound Clinic ("Wound Clinic"). *Doc. 66-1 at 15*.

From April 12 through April 18, nursing staff treated and wrapped Mr. Jones' wound daily. *Id. at 16-18*.

On April 18, medical staff at the Wound Clinic evaluated Mr. Jones. They recommended that: (1) Mr. Jones' dressing be changed twice daily with Silvadene; (2) Mr. Jones receive a stronger pain medication for the dressing change; (3) Mr. Jones return to the Wound Clinic in one week for a follow-up examination. *Id. at 19*; *Doc. 66-2 at 31*. On the same day, ARPN Wood prescribed Mr. Jones a prescription for Acetaminophen-Codeine #3 (Tylenol #3). *Doc. 66-1 at 19*.

From April 19 through April 26, nursing staff treated and wrapped, or attempted to treat and wrap, Mr. Jones' wound twice daily.[6] *Id. at 20-26*.

On April 26, medical staff at the Wound Clinic examined Mr. Jones. *Doc. 66-2 at 38*. They recommended that: (1) ADC medical staff continue Mr. Jones' course

---

[6] On April 22, Mr. Jones refused to have his bandage removed during his second treatment call. *Doc. 66-1 at 22*.

of care; and (2) Mr. Jones return to the Wound Clinic in two weeks for a follow-up examination. *Id*.

From April 27 through May 9, nursing staff treated and wrapped, or attempted to treat and wrap, Mr. Jones' wound twice daily.[7] *Doc. 66-1 at 27-37*.

On May 10, Defendant Bland examined Mr. Jones. *Id. at 38*. She prescribed Mr. Jones tramadol for pain and recommended that he continue receiving wound care. *Id*.

From May 11 through June 7, nursing staff consistently treated and wrapped, or attempted to treat and wrap, Mr. Jones' wound twice daily.[8] *Id. at 39-59*.

On June 8, medical staff at the Wound Clinic again examined Mr. Jones. *Id. at 60*. At that time, they recommended that Mr. Jones' dressing be changed once daily. *Doc. 66-2 at 53*.

From June 9 through June 20, nursing staff consistently treated and wrapped Mr. Jones' wound daily.[9] *Doc. 66-1 at 60- 63*.

---

[7] On May 7, Mr. Jones did not appear for his treatment call. *Doc. 66-1 at 35*.

[8] On May 12, May 19, May 23, May 31, Mr. Jones did not appear for one of his daily treatment calls. *Id. at 40, 42, 44, 48, 53*; *Doc. 66-2 at 43-45, 49, 52*. Mr. Jones testified that, "there were times that [he] missed that pill window because the pain was so excruciating [that he] couldn't go." *Doc. 66-3 at 46*. On May 20 and June 2, Mr. Jones' medical records indicate that he only had one treatment call. *Doc. 66-1 at 44, 54*.

[9] On June 15, Mr. Jones' medical records indicate the he did not have a treatment call. *Id. at 64*.

On June 20, medical staff at the Wound Clinic examined Mr. Jones. *Id. at 65*. They recommended that Mr. Jones change his wound dressing weekly or as needed if soiled. *Id.*; *Doc. 66-2 at 58*.

On June 21, ARPN Wood examined Mr. Jones. *Doc. 66-2 at 1*. At that time, Mr. Jones stated that he was suffering less pain, improved mobility, and he "really think[s] [he] turned the corner [] a few days ago." *Id*. Mr. Jones requested a cane, rather than crutches.

From June 26 through July 1, nursing staff treated and wrapped Mr. Jones' wound. *Id. at 2-4*.

On July 2, medical staff at the Wound Center examined Mr. Jones for a final time. *Id. at 4*. They recommended that Mr. Jones' dressing be changed once daily or as needed. *Id. at 62*.

On July 11, ARPN Wood examined Mr. Jones and concluded that "wound care is no longer necessary as the wound has healed and crusted over completely." *Doc. 66-2 at 6*. On the same day, Mr. Jones reported that he had been "shooting some ball" in the gym. *Id*.

On October 8, 2018, nursing staff examined Mr. Jones based on his complaints of pain in the scar of his right foot. Nurse Hargraves noted Mr. Jones' steady gait and his ability to stand without difficulty. *Id. at 9*. Three days later, Defendant Bland examined Mr. Jones. *Id. at 10*. She noted that Mr. Jones' skin was

extremely dry, but he did not show any sign of infection. *Id*. Defendant Bland concluded that: (1) Mr. Jones was not using the Absorbase, as recommended; and (2) narcotics were "not indicated." *Id*.

On two additional occasions, nursing staff evaluated Mr. Jones based on his complaints of foot pain. *Id. at 11, 13*. On February 4, 2019, medical staff noted that Mr. Jones suffered from dry skin. *Id. at 11*. On March 28, 2019, medical staff noted that Mr. Jones' scar was smooth and shiny. *Id. at 13*.

V. **Discussion:**

    A. **Medical Deliberate Indifference**

The "deliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). Deliberate indifference in this context has objective and subjective components. To prevail on a medical deliberate indifference claim, a prisoner must show both: (1) that he suffered from objectively serious medical needs; and (2) that prison officials knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

    B. **Defendant Bland**

Mr. Jones claims that Defendant Bland demonstrated deliberate indifference to his serious medical needs when she: (1) failed to perform a skin graph on his foot;

9

(2) failed to initially provide him Silvadene twice daily, rather than once; (3) failed to have him immediately examined by an outside provider; and (4) failed to diagnose him with a first-degree burn. *Doc. 66-3 at 39, 41. 55*.

Defendant Bland does not dispute that Mr. Jones suffered objectively serious medical needs, but she contends that summary judgment is proper because he cannot show that any conduct on her part amounted to deliberate indifference. She submits the affidavit of Chris Horan, M.D., Regional Medical Director for Wellpath, LLC. *Doc. 66-4*. Dr. Horan testifies that after reviewing Mr. Jones' medical records for the treatment that he received for the burn that he sustained in March 2018, it is his medical opinion that: (1) "[t]he care provided to Mr. Jones by Estella Bland was appropriate"; (2) "the pain medication provided to Mr. Jones was appropriate"; and (3) "skin graphs were not indicated." *Id. at 4*.

"In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Thompson v. King*, 730 F.3d 742, 746–47 (8th Cir. 2013). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference. Negligence, even gross negligence, is not deemed "an unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105. Thus, Defendant Bland can be held liable only if her actions were "so inappropriate as to evidence intentional

10

maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

In addition, disagreement with treatment decisions cannot support a medical deliberate indifference claim. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Where medical records show that treatment was provided, and a physician's affidavit state that the care was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment. *Dulany*, 132 F.3d at 1240.

On the undisputed record, no reasonable fact finder could conclude that Defendant Bland was deliberately indifferent to Mr. Jones' serious medical needs. Rather, Mr. Jones' medical records show that: (1) Defendant Bland consistently examined Mr. Jones; (2) nursing staff consistently treated Mr. Jones and provided him medication;[10] and (3) medical staff at the Wound Clinic examined Mr. Jones multiple times.

In sum, the record lacks any evidence to permit a reasonable juror to find that Defendant Bland provided Mr. Jones with constitutionally inadequate medical care for his burn.[11]

---

[10] Although Mr. Jones' medical records indicate that the medical staff missed three of his treatment calls during his five-month course of treatment, such conduct can be categorized as negligent at most. Such conduct fails to rise to a constitutional violation. See *Estelle*, 429 U.S. at 105.

[11] Even Mr. Jones concedes that "they were almost there, but they weren't quite there." *Doc. 66-3 at 52.*

## C. Defendant Powell

In his deposition, Mr. Jones testified that he sued Defendant Powell because "she is a boss of some sort at WellPath"; and (2) other inmates suggested that he name her as a Defendant. *Doc. 66-3 at 42-43*. He explains that Defendant Powell "never laid eyes on" his injury; and (2) never provided him any medical treatment. *Id. at 43*.

It is well settled that a supervisor may not be held vicariously liable, in a § 1983 action, for the constitutional violations of a subordinate on a respondeat superior theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "vicarious liability is inapplicable to . . . § 1983 suits"); *Saylor v. Nebraska*, 812 F.3d 637, 644-45 (8th Cir. 2016) (because a supervisor cannot be held vicariously liable for the constitutional violations of a subordinate, prisoner must "show that the supervisor personally participated in or had direct responsibility for the alleged violations" or "that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts"). Thus, Mr. Jones may not hold Defendant Powell vicariously liable for any constitutional violations committed by her subordinates. Instead, Mr. Jones must allege that Defendant Powell "through [her] own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

During his deposition, Mr. Jones testified that Defendant Powell "quite possibly" could have approved the rejection of a consult for a skin graph. *Doc. 66-3 at 74*. This is Mr. Jones only factual allegation against Defendant Powell. However, as stated above, Mr. Jones cannot create a dispute of material fact by merely alleging that he disagrees with treatment that Defendant Powell provided. See *Gibson*, *supra*. Furthermore, Dr. Horan testified that a skin graph was not medically indicated.

Accordingly, Mr. Jones' claim against Defendant Powell also fails as a matter of law. The record contains no evidence from which a reasonable juror could conclude that Defendant Powell provided Mr. Jones with constitutionally inadequate medical care for his burn.

### VI. **Conclusion:**

IT IS THEREFORE RECOMMENDED that:

1. Defendants' motion for summary judgment (*Doc. 65*) be GRANTED, and Mr. Jones' claims against them be DISMISSED, with prejudice.

2. The Clerk be directed to close this case.

DATED this 25th day of May, 2022.

_____
UNITED STATES MAGISTRATE JUDGE